**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIC REJDAK, et al., | ) |
|     Plaintiffs, | ) No. 15 CV 9373 |
| v. | ) Magistrate Judge Young B. Kim |
| WORTHINGTON CYLINDERS WISCONSIN, LLC, et al., | ) |
|     Defendants. | ) October 26, 2016 |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Eric Rejdak and Dariusz Klimek have moved pursuant to Federal Rule of Civil Procedure 26(c) for a protective order allowing them to avoid providing the information requested in Defendant Irwin Industrial Tool Co.'s ("Irwin") Request for Production Number 14 ("Request 14") and excusing them from submitting a privilege log in response to Request 14. For the following reasons, Plaintiffs' motion is denied.

**Analysis**

In moving for a protective order, Plaintiffs argue that they should be excused from producing a privilege log in response to Request 14 because, according to them, a privilege log would be impossible to create and because it inevitably would disclose protected attorney work product. As ordered, the parties filed a status report on August 10, 2016, (R. 74), advising the court of written discovery issues they were unable to resolve on their own. One of the discovery issues noted in the report was whether Plaintiffs should have produced a privilege log when objecting

to producing documents in response to Request 14. On August 22, 2016, Plaintiffs again objected in court to producing a privilege log. The court permitted Plaintiffs to brief this issue. (R. 78.)

In their motion for protective order, Plaintiffs first object to what they characterize as the overly broad nature of Request 14, which seeks the following information:

> Any document You obtained from, or to which You have access through, any litigation clearinghouse, or any other association, organization group or individual, including without limitation any one operated by the American Trial Lawyers Associations or the Attorney's Information Exchange Group, that concerns, involves or in any way related to Newell; the Product; the Cylinder; the Torch; any product or exemplar designed, tested, created, manufactured, assembled, sold, or distributed by Newell; or any product or exemplar that you contend is the same or similar model as the Product, Cylinder, or Torch.

(R. 82, Pl.'s Mot. at 1.) Plaintiffs contend that Request 14 is overly broad and seeks to target their attorneys' litigation strategies by probing into the documents the attorneys gathered in anticipation of the current litigation. (Id. at 2.) Plaintiffs further argue that producing a privilege log in response to Request 14 necessarily would disclose their attorneys' work product because, they say, even listing the documents in their possession would reveal their litigation strategy. In other words, according to Plaintiffs, providing a list of responsive documents in a privilege log would give Irwin the exact information to which they say it is not entitled. (Id. at 9.)

Federal Rule of Civil Procedure 26(c)(1) allows the court, for good cause, to issue an order protecting a party or person from "annoyance, embarrassment,

oppression, or undue burden or expense." A protective order that limits discovery requires the moving party to show good cause by submitting "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (quotation and citation omitted). The burden of showing good cause rests on the moving party. *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 762, 766 (N.D. Ill. 2010). "A showing of good cause is only unnecessary when the court's review of the record makes plain the need for a protective order." *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 342 (N.D. Ill. 1998).

With respect to Plaintiffs' initial objection that Request 14 is overly broad, the hyperbolic language they employ in support of that objection does not meet the good-cause threshold. According to Plaintiffs, "Request 14 covers every document created in the history of mankind." (R. 82, Pls.' Mot. at 2.) They double down on that argument in their reply, where they assert that "there is not a document on Earth which is *not* covered by Request 14." (R. 89, Pls.' Reply at 3 (emphasis in original).) It is hard to take such assertions seriously. Surely, newly minted Nobel Laureate Bob Dylan's songbook would not be responsive to Request 14, nor would, say, a tourist's map of Chicago or a recipe for chocolate chip cookies. It may be that Plaintiffs have legitimately objected to Request 14 as being overly broad, but it is unreasonable to suggest that a request clearly aimed at documents concerning Newell and certain specific products can be read to encompass the totality of humanity's written record.

3

Turning to Plaintiffs' more serious argument, that Request 14 seeks documents protected by the work product doctrine, without more information the court is unable to fully evaluate their objection. Plaintiffs make a conclusory allegation that Newell seeks the information in Request 14 so that it can get a "free ride" on Plaintiffs' attorneys' work product. (R. 82, Pls.' Mot. at 4 (citation omitted).) Specifically, they argue that Request 14 seeks to gain access to documents their attorneys curated in anticipation of this litigation, and therefore, turning over this group of documents would necessarily reveal their attorneys' thought processes.

The work product doctrine recognizes that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The doctrine is designed to protect from disclosure a lawyer's work reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs," and other things which the lawyer prepares with an "eye toward litigation." *Id.* The work product doctrine has been codified in Federal Rule of Civil Procedure 26(b)(3), which specifies that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Recognizing that the rule targets documents that are prepared by a party or its attorneys, Plaintiffs point to a number of out-of-circuit cases to support their argument that documents prepared by third parties and that otherwise would not be protected become work product

4

when selected and compiled by an attorney.[1] But in cases like *Omaha Public Power* and *James Julian*, the parties seeking discovery went after subsets of documents that had already been produced, consisting of documents segregated from the production by their attorneys to prepare a witness for deposition. *See Omaha Pub. Power Dist. v. Foster Wheeler Corp.*, 109 F.R.D. 615, 616 (D. Neb. 1986); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982). In both of those cases, the court considered the subsets of previously disclosed documents to be work product because the purpose of the request was to scrutinize the attorneys' document-selection process for preparing witnesses for depositions. *Omaha Pub. Power Dist.*, 109 F.R.D. at 615-16; *James Julian, Inc.*, 93 F.R.D. at 144 (noting that plaintiff did not object to producing documents in binder, but only objected to producing binder itself, which represented counsel's selection and ordering decisions). In other words, because the plaintiffs had already obtained documents through discovery, requiring the defendants to produce a subset opposing counsel had culled for a specific purpose would convey no additional information other than the attorneys' strategies in organizing those documents. *See also Sporck v. Peil*, 759

---

[1] Plaintiffs also cite to a Seventh Circuit case where the court described the work product doctrine as covering any document that "can fairly be said to have been prepared or *obtained* because of the prospect of litigation," *see Binks Mfg. Co. v. Nat. Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983) (emphasis added) (quoting 8 Wright & Miller, Federal Practice & Procedure § 2024), and two district court cases citing it, to support their argument that it is enough for an attorney to have obtained a document prepared by a third-party to cloak that document in work-product protection. (R. 82, Pls.' Mot. at 3.) But none of those cases discussed whether an attorney's document-selection process elevates to the status of protected work product documents which are prepared by third parties and which are otherwise unprotected.

F.2d 312, 315-16 (3d Cir. 1985) (holding that the selection process of already-produced documents in preparing a witness for deposition constitutes attorney work product).

On the other hand, in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1325 (8th Cir. 1986)—another case Plaintiffs rely on here—opposing counsel attempted to depose the defendant's in-house counsel to determine the existence of relevant documents. In the deposition, in-house counsel refused to answer questions relating to the existence of specific documents in the fear that acknowledging her memory of certain documents would reveal to her opponent which of a large swath of documents she found significant. *Id.* at 1328-29. The court noted that the information the deposing party sought could be or already had been obtained through other means of discovery. *Id.* at 1327. In those circumstances, the court held that revealing her recollection would expose her legal theories concerning the case. *Id.* at 1329. Accordingly, the court concluded that the attorney was entitled to refuse to answer the questions on the basis of the work product doctrine. *Id.*

Conversely, courts in this Circuit have concluded that the mere assembly of documents without any additional information that would reveal the attorney's thought process is subject to discovery. *See E.E.O.C. v. Jewel Food Stores*, 231 F.R.D. 343, 347 (N.D. Ill. 2005). That is because "the mere assembly of documents, without more, does not indicate that the attorney placed special weight on those documents as opposed to documents that were not obtained, and does not reveal which of the assembled documents the attorney deems important." *Id.* Especially

6

when a vast number of documents are involved in the discovery request, the possibility of the opposing party discerning any litigation strategy is highly unlikely. *See Portis v. City of Chicago*, No. 02 CV 3139, 2004 WL 1535854, at *2 (N.D. Ill. 2004). Moreover, the mere act of gathering documents from third parties "does not 'gloss' the documents with an attorney's mental impressions." *See Kartman v. State Farm Mut. Auto Ins. Co.*, 247 F.R.D. 561, 564 (S.D. Ind. 2007) (quotation omitted). Although the court cannot determine at this time whether Request 14 targets protected information, the mere possession of documents by Plaintiffs' attorneys does not elevate otherwise unprotected documents to the status of work product.

The reason this court is unable to fully evaluate the work product objection is because Plaintiffs seek to be absolved of the obligation to produce a privilege log, arguing that even broadly characterizing the responsive documents will reveal their attorneys' strategies. (R. 82, Pls.' Mot. at 2, 9-10.) As an initial matter, they reiterate their hyperbolic over-breadth objection, arguing that were they required to submit a privilege log it would consist of one word that says, "Everything." (Id. at 2.) That argument actually undercuts their privilege assertion, because certainly they can't mean that every document in the history of mankind is subject to the work product privilege simply because it might pass through their attorneys' hands. More importantly, Federal Rule of Civil Procedure 26(b)(5) requires parties to produce a privilege log "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection

7

as trial-preparation material . . . ." The privilege log must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

In arguing that a privilege log necessarily would disclose protected information, Plaintiffs overlook the mandatory language in Rule 26(b)(5), and point to several out-of-circuit cases that are factually distinct from the current situation. For example, in *Schwarzkopf Technologies Corporation v. Ingersoll Cutting Tool Company*, 142 F.R.D. 420, 422-23 (D. Del. 1992), the party responding to discovery produced a privilege log listing "collections" of documents but not identifying the documents individually. The court declined to compel the plaintiff to provide a more detailed log, in order to protect the plaintiff's attorney's understanding of the case. *Id.* None of the cases Plaintiffs cite entirely absolve a party of submitting a privilege log. Here, even if the documents Plaintiffs withhold based on the work product doctrine are compilations, Plaintiffs have not shown that there is good cause to justify absolving them of the Rule 26(b)(5) requirement. Accordingly, they must produce a privilege log giving at least a general description of the withheld materials. See Fed. R. Civ. P. 25(b)(5).

**Conclusion**

For the foregoing reasons, the motion is denied. To the extent that Plaintiffs are withholding otherwise discoverable, responsive information based on work

product protection, they must produce a privilege log in response to Request 14 as required by Rule 26(b)(5).

ENTER:

_____
Young B. Kim
United States Magistrate Judge